**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**CYNTHIA KENTILE,**

                                        **Plaintiff,**

          **vs.**                                          **8:13-CV-880**
                                                           **(MAD/CFH)**

**CAROLYN W. COLVIN,**
**Commissioner of Social Security,**

                                        **Defendant.**

_____

**APPEARANCES:**                                **OF COUNSEL:**

Office of Mark A. Schneider                    Mark A. Schneider, Esq.
57 Court Street
Plattsburgh, New York 12901
_Attorney for Plaintiff_


Social Security Administration                 Katrina Lederer, Esq.
Office of General Counsel                      Special Asst. U.S. Attorney
26 Federal Plaza, Rm. 3904
New York, NY 10278
_Attorney for Defendant_

**Christian F. Hummel, U.S. Magistrate Judge:**

### REPORT-RECOMMENDATION AND ORDER[1]

### INTRODUCTION

          Plaintiff Cynthia Kentile, brings the above-captioned action pursuant to 42 U.S.C. §

405(g) seeking a review of the decision from the Commissioner of Social Security

("Commissioner") that denied her applications for disability insurance benefits ("DIB") and

supplemental social security income ("SSI").

_____

          [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)
and N.D.N.Y.L.R. 72.3(d).

## PROCEDURAL BACKGROUND

On January 29, 2009, plaintiff filed an application for DIB benefits. (T. 167-179)[2]. On January 31, 2009, plaintiff filed an application for SSI. (T. 167). Plaintiff was 41 years old at the time of the applications with prior work experience in nursing. (T. 173). Plaintiff claimed that she became unable to work beginning on December 1, 2005 due to arthritis, cysts on her lower back, cyclic vomiting syndrome, Hepatitis-C and bipolar disorder. (T. 172). On August 7, 2009, plaintiff's applications were denied and plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), which was held on April 29, 2011. (T. 24). Plaintiff appeared without an attorney. On July 29, 2011, the ALJ issued a decision denying plaintiff's claim for benefits. (T. 24-38). The Appeals Council denied plaintiff's review on June 26, 2013 and July 15, 2013, making the ALJ's decision the final determination of the Commissioner.[3] (T. 1-14). This action followed.

## DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the

---

[2]"(T.)" refers to pages of the Administrative Transcript, Dkt. No. 8.

[3] The Appeals Council issued a second decision on July 15, 2013 after considering additional evidence.

> Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

The ALJ found at step one that plaintiff has not engaged in substantial gainful activity since December 1, 2005. (T. 26). At step two, the ALJ concluded that plaintiff suffers from the following severe impairments: degenerative joint disease, degenerative disc disease, spondylolisthesis and bipolar II disorder. (T. 26). At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the Listing of Impairments. The ALJ then found the plaintiff had the Residual Functional Capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except unskilled light work with no frequent bending that only requires occasional interaction with the public". (T. 28). At step four, the ALJ concluded that plaintiff was unable to perform any past relevant work. (T. 37). At step five, relying on the Medical-Vocational Guidelines ("the grids") set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that

plaintiff had the RFC to perform jobs existing in significant numbers in the national economy. (T. 37). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act. (T. 38).

In seeking federal judicial review of the Commissioner's decision, plaintiff alleges that: (1) the ALJ failed to comply with the Regulations relating to the medical opinion evidence; (2) the ALJ failed to fully develop the record; (3) the ALJ's credibility analysis is flawed; (4) the ALJ's RFC assessment is not supported by substantial evidence; and (5) the Appeals Council failed to adequately explain the decision. (Dkt. No. 12). In addition, plaintiff filed a motion requesting that this Court consider "new and material evidence". (Dkt. No. 14).

## I.    MEDICAL OPINION EVIDENCE

The Second Circuit has defined a treating physician as one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Coty v. Sullivan*, 793 F.Supp. 83, 85  86 (S.D.N.Y.1992) (quoting *Schisler v. Bowen*, 851 F.2d 43 (2d Cir.1988)). Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78  79; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993). When an ALJ refuses to assign a treating physician's opinion controlling weight, she must consider a number of factors to determine the appropriate weight to assign, including:

> (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other

4

> factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2). The Regulations also specify that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schaal v. Apfel*, 134 F.3d 501, 503  504 (2d Cir.1998).

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts.  *See Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)).  "Similarly, treating source opinion can be rejected for lack of underlying expertise, or when it is brief, conclusory and unsupported by clinical findings, or when it appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy is reasonably suspected."  *Orts v. Astrue*, 2012 WL 6803588, at *5 (N.D.N.Y. 2012) (citations omitted). "While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence. " *See Martin v. Astrue*, 337 F. App'x 87, 89 (2d Cir. 2009).

Pursuant to 20 C.F.R. § 404.1527(1), every medical opinion, regardless of its source, must be evaluated.  However, the treating physician rule does not apply to consulting doctors. *See Jones v. Shalala*, 900 F.Supp. 663, 669 (S.D.N.Y. 1995); *see also Limpert v. Apfel*, 1998 WL 812569, at *6 (E.D.N.Y.1998).  "An ALJ may rely upon the opinions of both examining and non-examining

State agency medical consultants, since such consultants are deemed to be qualified experts in the field of Social Security disability." *Williams v. Astrue*, 2011 WL 831426, at *11 (N.D.N.Y.2011) (citing 20 C.F.R. §§ 404.1512(b)(6), 404.1513(C), 404.1527(f)(2), 416.912(b)(6), 416.913, and 416.927(f)(2)). The weight afforded a consultative opinion depends upon the thoroughness of the underlying medical examination and the degree of light the opinion sheds on the conflicting assessment of the treating physician. *Gray v. Astrue*, 2009 WL 790942, at *10  11 (N.D.N.Y. 2009) (citation omitted). While an ALJ must give "good reasons" if he does not give a treating physician's opinion sufficient weight, there is no similar requirement for consulting physicians. *Id*. (citing *Limpert*, 1998 WL 812569, at *6). If an ALJ relies upon a non-examining reviewer's opinion, that opinion must be supported by the bulk of the record. *See* Social Security Ruling ("SSR") 96  6p, 1996 WL374180, *2 (July 1996); *see also Rocchio v. Astrue*, 2010 WL 5563842, at *14 (S.D.N.Y. 2010).

Plaintiff argues that the ALJ erred when she (1) failed to assign any weight to plaintiff's records from Dr. Cassin and nurse practitioner Harry Hill at Northstar Mental Health; and (2) the ALJ erred when she dismissed the findings and opinions of her own consulting physicians; Dr. Kilbourne and Dr. Welch.

**A.      Northstar Mental Health**

In one sentence, plaintiff summarily argues that the ALJ should have assigned weight to the "numerous records and diagnosis" from Dr. Ruth Cassin and Nurse Practitioner Henry Hill. The Commissioner disagrees and argues that while Dr. Cassin and N.P. Hill diagnosed and treated plaintiff, they did not provide any opinions with respect to plaintiff's ability to perform work nor did they state that plaintiff was disabled.

In April 2009, Ruth Cassin, M.D. and Aaron Rumsey, M.S., both of whom were affiliated with North Star Mental Health Clinic, completed a questionnaire prepared by the agency. Dr. Cassin noted that plaintiff was taking Lithium and Klonopin to combat a reported twenty year history of mood disorder.[4] (T. 532). In response to the agency question regarding special testing, the doctor responded "N/A". The doctor did not perform any psychological testing. (T. 535). The doctor responded to the majority of questions pertaining to plaintiff's psychiatric state and mental status with the answer, "See Attached Documents". (T. 535). Dr. Cassin noted that plaintiff's days are spent caring for her four year old child. The doctor did not assess plaintiff's ability to function in a work setting and refused to provide an opinion on plaintiff's functional abilities. (T. 536). The doctor noted that she could not provide a medical opinion regarding plaintiff's ability to do work related activities but noted that medications and psychotherapy would be conditions needed for increased functioning.[5]

On May 15, 2009, plaintiff returned to Dr. Cassin for outpatient therapy and a psychological assessment. Plaintiff complained that her medication was "too strong" but she admitted that she was feeling well-rested and that she was not "wild" at home. Overall, plaintiff reported that she was "feeling better". Noting that depression was still an issue for plaintiff, the doctor prescribed Wellbutrin.[6] The doctor mentioned that plaintiff's "CPS case" was closed and plaintiff was again receiving Medicaid. After the 60-minute session, Dr. Cassin diagnosed

---

[4] Lithium is used in cases of manic depressive illness. *Physicians' Desk Reference (PDR)*, 61st Edition 2007, 1692. Klonopin is administered orally and used in the treatment of panic disorders. *Dorland's Illustrated Medical Dictionary,* 379, 1003 (31st ed.2007).

[5] The April 2009 record is the first evidence of any treatment by Ruth Cassin, M.D. at North Star Mental Health Clinic. Aaron Rumsey previously treated plaintiff from March 2009 until May 2009 however, plaintiff has not asserted any argument with respect to Mr. Rumsey's treatment or records.

[6] Wellbutrin is used as an antidepressant and as an aid in smoking cessation to reduce the symptoms of nicotine withdrawal. *Dorland's* at 265, 2107.

plaintiff with mood disorder and probable bipolar disorder. The doctor advised plaintiff to taper

off of her Klonopin and to seek therapy and care with her primary doctor. (T. 815-16). On June

19, 2009, plaintiff returned for a therapy session with Dr. Cassin. Plaintiff was "pleased" with her

medication stating that she was "much better and calmer" but still depressed and requested a

larger dose of Wellbutrin. Plaintiff was described as more "activated [sic]" and visibly more

relaxed but still complained of panic episodes. The doctor's diagnosis was unchanged and

plaintiff was advised to follow with her physician. (T. 817).

    While the record contains no further recorded visits with Dr. Cassin, plaintiff continued to

treat at North Star with Harry Hill, N.P. From November 2009 through September 2011, plaintiff

had nineteen appointments with N.P. Hill. Plaintiff was a "no show" for three of those

appointments and canceled five appointments. (T. 820-850). On December 9, 2009, N.P. Hill

met with plaintiff for the first time noting that her care was transferred to him as "another

practitioner left the agency". N.P. Hill reviewed plaintiff's records and took her history. Plaintiff

described a lifetime of problems with depression, anxiety and panic. Plaintiff lived with her 4 ½

year old daughter and drove herself to the appointment. Plaintiff described a vomiting problem

and elevated liver enzymes and stated that she was honorably discharged from the Navy. N.P.

Hill noted that plaintiff was also receiving therapy from Mr. Rumsey as part of her involvement

with the Franklin County Department of Social Services Child Preventative Services. At the time

of the examination, plaintiff was "out of medication" and felt depressed, unstable and unable to

concentrate. Upon examination, plaintiff displayed an anxious mood, denied suicidal tendencies

but stated she was pressured. Plaintiff did not have any tics but was exhibiting back pain.

Plaintiff's thinking was "logical" and her insight and judgment were good and she exhibited

difficulty concentrating. N.P. Hill diagnosed plaintiff with mood disorder. (T. 821). N.P. Hill

was concerned about plaintiff's "number of medications" but noted that some medication was necessary to help with her mood problems. N.P. Hill prescribed Eskalith (a form of Lithium) but told plaintiff that if she used more than prescribed, "I will never fill a prescription for her for this medication early under any circumstance whatsoever".

On January 10, 2010, plaintiff returned to N.P. Hill for an assessment with her daughter, Maggie. Plaintiff stated that the Lithium helped but that she battled insomnia and her mind raced. Plaintiff stated that she was able to do some shopping and get out of the house. Upon examination, N.P. Hill found plaintiff's speech normal and no involuntary movements or other behavior abnormalities. N.P. Hill's diagnosis was unchanged. N.P. Hill increased the Lithium dosage prescribed medication to help plaintiff sleep.

From March 2010 through September 2011, N.P. Hill adjusted plaintiff's medications in accordance with her description of side effects including weight gain and sleeplessness. Throughout her treatment, plaintiff claimed that she was "clean and sober" due to her involvement with CPS. Plaintiff refused to participate in therapy and claimed that it was not helpful. Plaintiff continually complained of anxiety. Throughout her treatment, the results of her mental examination were unchanged.

In March 2011, N.P. Hill noted that plaintiff was not doing well after she described anxiety related to her living situation and fear that she would be living on the street. In April 2011, Hill noted, "things are not very stable with her". However, plaintiff continued to refuse to participate in therapy or take any medication that caused weight gain. Throughout her treatment, N.P. Hill acknowledged plaintiff's physical complaints including abdominal and back pain and her treatment for those impairments. N.P. Hill urged plaintiff to restart Lithium regardless of the weight issues and to start therapy but plaintiff was unwilling. The majority of plaintiff's 25

minute sessions were spent managing her medication issues. (T. 846). Plaintiff discussed strained relations with her mother and her daughter's father resulting in little support with the care for her child. On September 26, 2011, plaintiff was scheduled to meet with Dr. Maxwell. Plaintiff canceled the appointment and did not reschedule.

Plaintiff argues, without any citation to the record or any analysis, that the ALJ erred when she failed to afford any weight to Dr. Cassin's assessment. Based upon the administrative record, the Court disagrees. Dr. Cassin examined plaintiff on two occasions and clearly did not provide plaintiff with the type of ongoing medical treatment that would define her as a "treating physician". *See George v. Bowen*, 692 F.Supp. 215, 219 (S.D.N.Y. 1988) (holding that the nature of the physician's relationship with the plaintiff did not rise to the level of a treating physician as the physician had only seen the plaintiff on two occasions). Moreover, Dr. Cassin was asked to provide an opinion on plaintiff's ability to perform work-related functions and refused to do so. Thus, the ALJ was not required to assign significant weight to Dr. Cassin's opinions or to explain her reasoning for failing to assign such weight.

With respect to N.P. Hill, under SSA regulations, nurse practitioners and physician assistants are considered "other sources" rather than "medical sources." and, as such, "a nurse practitioner's opinion is 'clearly not entitled to the controlling weight afforded to treating physician's opinions'". *Lasiege v. Colvin*, 2014 WL 1269380, at*11 (N.D.N.Y. 2014) (citing 20 C.F.R. § 404.1513(a),(d)(1)). The ALJ "has the discretion to determine the appropriate weight to accord the other source's opinion based on all the evidence before him." *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir.1995). "The Second Circuit has long recognized that the opinions of a[n] [other source] who regularly treats a claimant is entitled to 'some extra consideration .'" *Lasiege*, 2014 WL 1269370, at *11 (citing *Duell v. Astrue*, 2010 WL 87298 (N.D.N.Y. 2010)).

Here, the ALJ summarized and discussed N.P. Hill's treatment but did not assign any weight to his opinions/diagnosis. (T. 32-33). Further, the ALJ failed to explain her omission and refusal to assign any weight to N.P. Hill's diagnosis. Over the course of two years, plaintiff had eleven sessions with N.P. Hill. During that time, N.P. Hill prescribed a plethora of medications in an attempt to manage plaintiff's symptoms with minimal side effects. N.P. Hill consistently diagnosed plaintiff with a mood disorder. Based upon plaintiff's treatment and relationship with N.P. Hill, the ALJ should have, at the very least, mentioned and considered Hill's records as "other source" evidence. *See White v. Comm'r of Soc. Sec.*, 302 F.Supp.2d 170, 176 (W.D.N.Y.2004) (citing 20 C.F.R. § 416.913(a); § 416.913(d)) (consideration of social worker's report was particularly important given that he was sole source that had a regular treatment relationship with the plaintiff). While the ALJ is empowered with the discretion to afford less than controlling weight, or even no weight, to the opinion of "other sources", the ALJ has a duty to address and discuss the opinion. The Regulations require the ALJ to engage in a detailed analysis of N.P. Hill's treatment and provide "good reasons" for discounting his opinions. *Stytzer v. Astrue*, 2010 WL 3907771, at *6 (N.D.N.Y. 2010). The ALJ's omission was not harmless error. *See Lopez v. Barnhart*, 2008 WL 1859563, at *15 (S.D.N.Y. 2008) ( "[the social worker's] observations would be relevant on the issue of the intensity and persistence of [the] plaintiff's symptoms, which in turn affect [the] plaintiff's capacity for work and hence the ultimate disability determination"). On remand, the ALJ must address N.P. Hill's treatment and provide an explanation of what weight, if any, she assigns to that opinion.

**B.     Barry Kilbourne, M.D.**

Plaintiff claims that the ALJ improperly discounted the opinions of the consulting physician, Dr. Kilbourne. Plaintiff claims that, prior to providing an opinion for the agency, Dr.

Kilbourne was plaintiff's "treating physician" and thus, his opinions were entitled to greater weight. The Commissioner contends that the ALJ properly discussed Dr. Kilbourne's opinions and found the conclusions unsupported by the evidence and Dr. Kilbourne's examination.

From January 2007 until March 2009, plaintiff treated with North Country Family Physicians. (T. 258). On March 12, 2007, an x-ray of plaintiff's lumbar spine (ordered by Dr. David Welch) revealed degenerative spondylolisthesis and degenerative joint disease with "no significant change since 2006". (T. 260). From April 2007 through September 2007, plaintiff was treated at North Country but the name of the provider is illegible. In April 2007, plaintiff complained of depression, increased anxiety, low back pain and leg pain. The records do not clearly identify the provider. Plaintiff provided a history indicating that she was treated by Dr. Welch, lived in public housing and had financial stressors. Plaintiff's examination was "normal" and plaintiff was diagnosed with anxiety disorder and chronic low back pain. Plaintiff received a prescription for Paxil and Neurontin.[7] On July 11, 2007, plaintiff returned for a follow up for Neurontin treatment. Plaintiff noted that her pain was persistent but had improved and that she felt better. Plaintiff claimed that even with Paxil, she felt depressed, irritable and gained weight. Instead, plaintiff tried amphetamines that she received from a friend and "felt great with increased energy". Plaintiff's examination was "normal" and she was diagnosed with sciatica and depression. Plaintiff was directed to continue Neurontin and provided with a prescription for Lexapro.[8] (T. 263). On July 30, 2007 and September 19, 2007, plaintiff returned after being seen

---

[7] Neurontin is an anticonvulsant used as adjunctive therapy in the treatment of partial seizures. *Dorland's* at 764, 1287. Paxil is used to treat depressive, obsessive-compulsive, panic, and social anxiety disorders; administered orally. *Id*. at 1405, 1419. Seroquel is an antipsychotic medication used in the treatment of schizophrenia. *Id.* at 1590, 1723. Plaintiff returned twice in April 2007 for medical issues unrelated to the facts and issues herein.

[8] Lexapro is an antidepressant. *Dorland's* at 654, 1047.

in the emergency room suffering from dehydration and vomiting. Plaintiff complained of extreme stress, no patience and stated that she was easily agitated. She described "feeling like I'm on the edge". Plaintiff had been living in a homeless shelter and in a one room apartment with relationship difficulties, including abuse. Plaintiff was diagnosed with anxiety disorder, depression and an increase in life stressors. Plaintiff was told to continue Lexapro. (T. 265).

On April 30, 2009, Barry J. Kilbourne, M.D. examined plaintiff at the request of the New York State Office of Temporary and Disability Assistance. Plaintiff did not bring any records to the examination but the doctor noted that, "[s]he has been a patient of this office previously and records were available". Dr. Kilbourne discussed plaintiff's physical impairments and treatment including physical therapy, injections and TENS units. Dr. Kilbourne discussed Dr. Welch's conclusion that plaintiff has chronic pain syndrome with degenerative changes. Dr. Kilbourne noted that plaintiff developed changes related to bipolar disorder and stated that she suffers from vomiting syndrome, depression and hepatitis C. At that time, plaintiff cared for her child during the day. (T. 529). Upon examination, plaintiff exhibited a slightly "off the normal antalgic gait". However, when standing erect, forward bending was normal, backward bending, lateral and rotation motions were decreased by 10%. Plaintiff exhibited tenderness in her sacroiliac and hip areas. Straight leg raising was negative and reflexes normal. Strength in her legs was diminished. Dr. Kilbourne stated that plaintiff, "appears to have cyclic vomiting, modest depression and hepatitis C". While the doctor found these impairments not generally disabling, he admitted that "they are beyond the scope of my practice". Dr. Kilbourne noted, "[c]ertainly, the bipolar disorder may significantly effect her" and opined that plaintiff's physical examination did not show as much discomfort as her history. The doctor acknowledge that plaintiff complained of chronic pain, but she did not take any medication. Dr. Kilbourne concluded, "[s]he appears to be

13

somewhat deconditioned and is at the point perhaps secondary to her overall mental state in no hopes whatsoever of returning to work. She does have significant symptoms, although her overall examination does not show as much abnormality as her symptoms do". Dr. Kilbourne opined that plaintiff "should be able to do light work" but noted that her mental state and medications may mitigate against that. The doctor noted:

> I doubt that she is employable based upon her overall lack of feeling that she could improve or maintain any work status. She appears to have developed a significant depression that may mitigate against this. There appears to be a generalized level of anxiety and hopelessness that probably mitigates against any employability at this point. She is not planning to return to work under any circumstances which in itself would seem to make her unemployable. Her back issues appear to be significant and probably would make her mostly disabled from any kind of hard physical work. She is also very deconditioned". (T. 530).

In the decision, the ALJ discussed the April 2009 consultative examination and assigned "little weight" to Dr. Kilbourne's opinion. (T. 30-31, 36). The ALJ noted, "his opinion is not substantiated by the objective evidence including his examination of the claimant". The ALJ cited to plaintiff's slightly abnormal gait and mildly limited range of motion displayed during her examination with Dr. Kilbourne. Moreover, the ALJ concluded that Dr. Kilbourne's opinions were based upon plaintiff's statement that she does not intend to return to work and not upon his examination.

Upon review of the record, the Court finds that the ALJ's decision to assign "little weight" to Dr. Kilbourne's conclusion is supported by substantial evidence. Despite plaintiff's contentions, there is no evidence that Dr. Kilbourne was plaintiff's "treating physician" in 2007, or at any other time. The signatures on the 2007 records from North Country Family Physicians are illegible. Moreover, nowhere in his 2009 report does Dr. Kilbourne claim to have been plaintiff's treating physician. Indeed, he did not aver to having ever treated, or even met plaintiff,

prior to the date of the consultative examination. Even assuming Dr. Kilbourne provided treatment in 2007, there is no evidence that plaintiff received any treatment at North Country from September 2007 until Dr. Kilbourne's April 2009 consultative examination - nearly two years. The transcript contains records from Dr. Cook, another physician at North Country, however those records post-date Dr. Kilbourne's consultative examination.

While the ALJ may assign significant weight to the opinion of a consultative examiner, the record herein does not support such a determination. The restrictions and limitations imposed by Dr. Kilbourne are not supported by the results of objective examinations. Indeed, Dr. Kilbourne's opinions were seemingly based exclusively upon plaintiff's subjective complaints and recitation of her medical history. Dr. Kilbourne's own examination revealed no impairments or limitations substantiating plaintiff's pain. Dr. Kilbourne did not conduct, nor did he review, any clinical and laboratory diagnostic techniques. *See Coyle v. Apfel*, 66 F.Supp.2d 368, 377  378 (N.D.N.Y.1999) (holding that ALJ properly refused to afford controlling weight to physician's opinion that was inconsistent with the medical evidence). Dr. Kilbourne commented that plaintiff's "overall examination does not show as much abnormality as her symptoms do" and he further addressed her refusal to consider employment. Based upon the record, the Court finds that the weight assigned to Dr. Kilbourne's opinion is supported by substantial evidence. Moreover, the ALJ adequately explained her reasoning with sufficient support from the record.

**C.     David G. Welch, M.D.**

With respect to Dr. Welch, plaintiff offers similar arguments. Plaintiff claims that Dr. Welch previously treated plaintiff and the ALJ erred when she failed to explain how his opinions were not substantiated by evidence.

Prior to the date plaintiff claims she became disabled, Dr. Welch treated plaintiff for back pain at Adirondack Rehabilitation Medicine. Plaintiff treated with Dr. Welch in November 2001, December 2001, December 2002 and February 2003. [9] (T. 730). Five years after her last visit with Dr. Welch, on March 12, 2007, plaintiff was examined by Dr. Welch, at the request of the agency. The doctor noted that plaintiff sustained a work injury in October 2000 and while a work-up displayed evidence of spondylolisthesis, there was little else in the way of pathology. The doctor noted, "[h]er health has otherwise been good with no other medical problems". Upon examination, the doctor noted that plaintiff limped and displayed an antalgic gait. The range of motion in her back and straight leg raising was limited and plaintiff had tenderness in her lower back without spasm. (T. 754). The doctor noted that x-rays and MRI films from 2006 confirmed the presence of spondylolisthesis and that his impression was that plaintiff suffered from chronic low back pain with sciatica, but without discogenic disease. Due to her pain, the doctor opined that plaintiff's ability to stand, ambulate, sit or climb was limited. X-rays taken on the same day as the examination revealed no significant changes from the films taken in 2006.

The ALJ summarized Dr. Welch's 2007 examination and assigned "little weight" to his opinions. The ALJ found that the opinion was not substantiated by the objective evidence or by the doctor's own examination of plaintiff. (T. 36). The record does not contain sufficient information for this Court to conclude that Dr. Welch was plaintiff's treating physician. Regardless, even assuming that Dr. Welch was a treating provider, the doctor treated plaintiff prior to the date of her alleged disability. Moreover, the restrictive opinion expressed by Dr. Welch was not supported by his prior examinations of plaintiff or by any of diagnostic testing. To

---

[9] In the November 2001 treatment note, Dr. Welch indicates that plaintiff received treatment prior to that date. However, there are no medical records in the administrative transcript from Dr. Welch prior to November 2001.

wit, in December 2002, Dr. Welch noted that plaintiff was less tender over her SI joint but that she had some tenderness on her left side and groin area. Plaintiff's tolerance for standing improved and she was restricted to a 10 pound lifting limit. (T. 748). In February 2003, the doctor noted that plaintiff was participating in a nursing program and doing well and stated that as she improves, he expects plaintiff to resume more activity. (T. 746). There is no reference in either the December 2002 or February 2003 report to any MRI films or x-rays. The doctor's opinion is qualified with the phrase, "due to her pain". The ALJ was not required to give the limitations identified in Dr. Welch's evaluation controlling weight because they were based on plaintiff's subjective complaints of pain, not "medically acceptable clinical and laboratory diagnostic techniques." *Gallup v. Comm'r of Soc. Sec.*, 2014 WL 2480175, at *9 (N.D.N.Y. 2014) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). Thus, the ALJ did not err when she failed to assign controlling weight to Dr. Welch's opinion.

## II.    DUTY TO DEVELOP THE RECORD

Plaintiff claims that the ALJ should have contacted her treating physicians before discrediting their determinations. Moreover, plaintiff claims that, based upon the opinions expressed and diagnosis by N.P. Hill and Dr. Cassin, which were rendered after the consultative physicians examined plaintiff, the ALJ should have commissioned new psychiatric examinations before the April 2011 hearing.

An ALJ has an obligation to develop the administrative record, including, in certain circumstances, recontacting a source of a claimant's medical evidence, *sua sponte*, to obtain additional information. *Lukose v. Astrue*, 2011 WL 5191784, at *3 (W.D.N.Y.2011) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998)). The ALJ will obtain additional evidence if she

is unable to make a determination of disability based on the current record. 20 C.F.R. §

404.1527(c)(3). The Regulations provide:

> If the evidence is consistent but we do not have sufficient evidence to
> decide whether you are disabled, or if after weighing the evidence we
> decide we cannot reach a conclusion about whether you are disabled,
> we will try to obtain additional evidence under the provisions of §§
> 404.1512 and 404.1519 through 404.1519h. We will request additional
> existing records, recontact your treating sources or any other
> examining sources, ask you to undergo a consultative examination at
> our expense, or ask you or others for more information. We will
> consider any additional evidence we receive together with the evidence
> we already have.

20 C.F.R. § 404.1527(c)(3).

This affirmative duty is heightened in cases involving *pro se* claimants as the "ALJ has a

duty to adequately protect a *pro se* claimant's rights 'by ensuring that all of the relevant facts [are]

sufficiently developed and considered.'" *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir.1990) (quoting

*Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980)).   In this regard, the ALJ must make "every

reasonable effort to help [the claimant] get medical reports from [his or her] own medical

sources."  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996) (quoting 20 C.F.R. § 404.1512(d)).

"The duty to develop the record is 'particularly important' when obtaining information from a

claimant's treating physician due to the 'treating physician' provisions in the regulations." *Dickson

v. Astrue*, 2008 WL 4287389, at *13 (N.D.N.Y. 2008).   In furtherance of the duty to develop the

record, an ALJ may re-contact medical sources if the evidence received from the treating

physician or other medical sources is inadequate to determine disability and additional

information is needed to reach a determination. 20 C.F.R. at § 404.1512(e).

In this Circuit, the courts have consistently held that if the record does not contain any

Medical Source Statement or RFC Assessment from plaintiff's treating physician, the ALJ has a

duty to contact plaintiff's treating physician in an attempt to obtain an assessment. *See Pitcher v. Barnhart*, 2009 WL 890671, at *14 (N.D.N.Y.2 009) (an MSS or RFC from the treating physician was important because the ALJ granted the other physician's MSS "moderate weight," and the only other individual to assess the plaintiff's RFC was a disability analyst); *see also Hopper v. Comm'r of Soc. Sec.*, 2008 WL 724288, at *11 (N.D.N.Y. 2008); *see also Dickson*, 2008 WL 4287389, at *13. This duty also includes advising the plaintiff of the importance of such evidence. *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y.2004) ("[a]t a minimum, if the ALJ is inclined to deny benefits, he should advise a claimant that her case is unpersuasive and suggest that she supplement the record or call her treating physician as a witness") (citation omitted). The Regulations provide that, "[t]he Commissioner should request an MSS from the claimant's treating physician if such a statement has not been provided. *Outley v. Astrue*, 2010 WL 3703065, at *4 (N.D.N.Y. 2010) (citing 20 C.F.R. § 416.912(d) (explaining that the Commissioner will "make every reasonable effort to help you get medical reports from your own medical sources, a medical report should include an MSS"). In decisions involving the ALJ's duty to obtain an MSS, courts frequently cite to Judge Spatt's explanation in *Peed v. Sullivan:*

> What is valuable about the perspective of the treating physician     what distinguishes him from the examining physician and from the ALJ     is his opportunity to develop an informed opinion as to the physical status of a patient. To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his evidence so much more reliable than that of an examining physician who sees the claimant once and who performs the same tests and studies as the treating physician.

*Peed v. Sullivan*, 778 F.Supp. 1241, 1246 (E.D.N.Y.1991).

"Although the regulation provides that the lack of such a [MSS] statement will not render a report incomplete, it nevertheless promises that the Commissioner will request one." *Johnson v.*

*Astrue*, 2011 WL 4348302, at *10 (E.D.N.Y.2011) (citations omitted). The ALJ must request such a statement regardless of whether the record contains a complete medical history. *Id*. (citing § 404.1513(b)(6)).

The failure to contact the physicians constitutes a breach of the ALJ's duty to develop the record and provides a basis for remand. *Lawton v. Astrue*, 2009 WL 2867905, at *16 (N.D.N.Y. 2009). When the ALJ's decision is made, "without reference to the reports of the treating mental health professionals", the ALJ's failure to develop the record concerning plaintiff's mental conditions, coupled with the lack of evidence supporting the ALJ's findings, warrants this Court's reversal and remand for additional proceedings. *See Rivera v. Barnhart*, 379 F.Supp.2d 599, 608 (S.D.N.Y. 2005).

Here, the Court is troubled by the fact that the ALJ failed to assign <u>any</u> weight to <u>any</u> of plaintiff's treating sources or medical sources. Moreover, the ALJ failed to identify any source as a treating source. The ALJ recited summaries of the treatment notes from plaintiff's providers but failed to provide any analysis whatsoever. Rather, the ALJ confined her analysis of the opinion evidence to the opinions expressed by the consultative examiners and only assigned weight to those opinions. The Commissioner seemingly argues that this omission should not result in remand as the record lacked any medical source statements or opinions regarding plaintiff's ability to perform work related functions by any of plaintiff's treating or medical sources. This omission, coupled with plaintiff's lack of representation, compels this Court to examine the ALJ's duty to further develop the record.

Based upon the regulations, N.P. Hill is not considered plaintiff's "treating source". The ALJ has the duty to seek additional information from treating sources or other medical sources in developing the record, *see* 20 C.F.R. § 404.1512(e)(1), 416.912(e)(1) (describing the ALJ's duty to

"first recontact [a claimant's] treating physician or psychologist or other medical source to determine whether the additional information [he] need[s] is readily available"), however, in this matter, plaintiff has failed to explain why such efforts should be made with respect to N.P. Hill. Plaintiff has not pointed to any gaps in the record nor does she argue that the record lacked sufficient information for the ALJ to determine plaintiff's disability. Plaintiff summarily asserts that the ALJ failed to contact the treating sources and made medical determinations without medical evidence. Plaintiff does not cite to relevant portions of the record supporting her assertions. This Court will remand this matter for the ALJ to consider N.P. Hill's treatment and to analyze the records accordingly. However, the ALJ is not compelled to recontact N.P. Hill. Further, as discussed *supra*, Dr. Cassin was not plaintiff's treating physician and, in fact, refused to provide an opinion on plaintiff's work-related abilities when previously requested to do so. Accordingly, the ALJ is not obligated to recontact Dr. Cassin.

What disturbs this Court is the ALJ's complete disregard for plaintiff's treating sources, the lack of any Medical Source Statement from any treating providers and the ALJ's failure to attempt to obtain a Medical Source Statement from any treating provider. This is further concerning given plaintiff's lack of legal representation at the time of the hearing. Plaintiff is now represented by counsel but counsel neglected to address this issue in the brief in support of remand. Despite that misstep, the ALJ's glaring omission cannot be overlooked by the Court. Specifically, the Court recognizes the issue as it pertains to plaintiff's treatment with Dr. George Cook and Dr. Albert Dingley.[10]

---

[10] The administrative record contains treatment notes from other providers. However, the ALJ is not compelled to consider or assign weight to treatment that predates plaintiff's application for disability benefits. *See Bergeron v. Astrue*, 2011 WL 6255372, at *8 (N.D.N.Y. 2011) (citing, *inter alia, Bromback v. Barnhart*, 2004 WL 1687223, at *7 (S.D.N.Y. 2004) (holding that the ALJ should not have relied on an evaluation that was made one year prior to the hearing)); *see also Saxon v. Astrue*, 781 F.Supp.2d 92, 103 (N.D.N.Y. 2011) (the ALJ properly refused to give significant weight to the doctor who did not provide any opinion or treatment during the time period at issue

The ALJ summarized plaintiff's medical treatment with Dr. George Cook but failed to assign any weight to his diagnosis/treatment and neglected to explain her reasoning. On May 16, 2009, plaintiff was examined by Dr. George Cook, a physician affiliated with North Country Family Physicians. Dr. Cook noted that plaintiff "has done nothing for her Hep C", plaintiff was on medication for her bipolar illness and that she suffered from chronic low back pain and cyclical vomiting. The doctor's examination revealed no abnormal results. Dr. Cook diagnosed plaintiff with low back syndrome and prescribed pain medication. The doctor stated that plaintiff's bipolar disorder was "in remission" and that plaintiff accepted treatment and admitted to her illness. (T. 569). On July 1, 2009, plaintiff followed with Dr. Cook to discuss her liver functions and on July 9, 2009, she returned complaining of ear pain. The doctor's examination revealed no abnormal results and his diagnosis was unchanged. (T. 571). In December 2009, plaintiff complained of low back pain and exhibited tenderness in that region. Dr. Cook prescribed Lyrica and Zofran.[11] (T. 865).

In October 2010, plaintiff returned to Dr. Cook for an annual physical and complaints of low back pain and knee pain. Plaintiff stated that her daughter was in school and "it's time to take care of her health". Upon examination, plaintiff appeared well developed and exhibited no acute distress. The examination did not reveal any positive results relating to plaintiff's lower back. The doctor diagnosed plaintiff with low back syndrome and referred plaintiff to Dr. Homer for liver and stomach issues. (T. 766). On April 8, 2011, plaintiff returned complaining of back pain. She stated that physical therapy did not help and that she previously had a cortisone shot. Upon

herein).

[11] Lyrica is a medication used to relieve neuropathic pain and to relieve the pain of fibromyalgia. www.ncbi.nim.nih.gov/pubmedhealth/PMH0000327.

inspection, Dr. Cook noted, "surface tenderness in S1 area and exaggerated lordosis". Dr. Cook prescribed Vicodin and ordered x-rays of plaintiff's lumbar spine. (T. 767). The films revealed degenerative spondylolisthesis of L-5 and mild degenerative disc disease at each lumbar disc level and degenerative changes in the facet joints bilaterally. (T. 769). In May 2011, plaintiff returned for refills and complained that her condition was worse. She wanted to discuss shots. Dr. Cook increased plaintiff's Vicodin dosage. In June 2011, plaintiff returned for a follow up appointment after a recent visit for vomiting. The doctor noted that plaintiff was much better and that this was the first episode of vomiting in two years. On September 14, 2011, plaintiff returned for a follow up on her back pain and indicated that she was scheduled for a knee scope with Dr. Smith. Plaintiff complained of pain traveling to her leg and asked about a new MRI and/or a steroid shot. She stated that Vicodin helped her comfort level and that her last MRI on her back was 2007. Upon examination, plaintiff displayed tenderness in the SI joint area but was unable to perform straight leg testing due to pain. Plaintiff's lower extremities were normal. The doctor prescribed Vicodin and an MRI. (T. 855). On September 30, 2011, plaintiff returned complaining of weakness after undergoing hernia surgery. The doctor noted that her medications may be causing dizziness and refilled plaintiff's prescription for Vicodin.

Applying the Regulations to the facts herein, Dr. Cook qualifies as one of plaintiff's treating physicians. Dr. Cook provided plaintiff with the type of ongoing treatment, during the relevant period. In addition, Dr. Cook ordered objective testing and prescribed various medications for plaintiff's complaints of pain. The ALJ failed to mention, consider or discuss Dr. Cook's treatment. "The duty of an ALJ to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician' provisions in the regulations." *Dickson v. Astrue*, 2008 WL 4287389, at *13 (N.D.N.Y. 2008)

(citing *Devora v. Barnhart*, 205 F.Supp.2d 164, 172 (S.D.N.Y. 2002)). For similar reasons discussed *supra*, the ALJ's omission constitutes reversible error. The ALJ neglected to assign any weight to the doctor's opinions/diagnosis and failed to explain why he disregarded the opinions entirely. The Court cannot hold that the ALJ was required to assign controlling weight to Dr. Cook's opinions, however, in light of the doctor's notes, the length of plaintiff's treatment and the type of treatment and diagnosis, the ALJ should have considered this evidence and provided sufficient reasoning if she intended to assign anything other than controlling weight to the opinions. Moreover, because Dr. Cook was a treating source with the requisite specialty, the ALJ should have contacted the treating physician and requested an opinion regarding plaintiff's residual functional capacity. See 20 C.F.R. § 404.1513(b)(6) (a "medical report" should include "[a] statement about what [the claimant] can still do despite [her] impairment(s)"); *Christian v. Colvin*, 2013 WL 5423715, 7 -8 (N.D.N.Y. 2013) (citing *Lawton v. Astrue*, 2009 WL 2867905, at *16 (N.D.N.Y. 2009) ("[t]he ALJ's failure to re-contact [plaintiff's treating physician] in an attempt to obtain an RFC or medical source statement constitutes a breach of the ALJ's duty to develop the record, and provides a basis for remand."))[12] Upon remand, the ALJ is instructed to follow the Regulations and contact Dr. Cook to develop the record accordingly. *See Stytzer*, 2010 WL 3907771, at *7.

Similarly, the ALJ failed to mention, consider or analyze plaintiff's treatment with Albert F. Dingley, M.D., a doctor affiliated with Lake Placid Sports Medicine. (T. 230 - 254). The Court will refrain from summarizing Dr. Dingley's treatment records but takes note of the fact that Dr. Dingley treated plaintiff from 2004 until February 2007 for complaints of lower back pain. Dr.

---

[12] While plaintiff's counsel failed to articulate an argument with respect to this issue, the ALJ has an independent obligation in this regard. *See Christian* , 2013WL 5423715, at *7 -8, n. 9.

24

Dingley examined plaintiff, prescribed medication for her back pain and conducted objective testing including x-rays and MRI films. The ALJ failed to mention, consider or discuss any treatment by Dr. Dingley. For the reasons discussed *supra*, upon remand, the ALJ is directed to consider Dr. Dingley's treatment, recontact the doctor for an opinion on plaintiff's ability to perform work-related functions and develop the record accordingly.

Finally, with respect to the assertion that new consultative examinations were necessary, the ALJ has the duty to order a consultative examination where the record establishes that such an examination is necessary to enable the ALJ to render a decision. *Serianni v. Astrue*, 2010 WL 786305, at *5 (N.D.N.Y. 2010) (citing 20 C.F.R. § 404.1517). The Regulations require that the ALJ must order a consultative examination when "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved". *Id*. (citing *Matejka v. Barnhart*, 386 F.Supp.2d 198, 208 09 (W.D.N.Y. 2005) (citing 20 C.F.R. § 404.1519a(b)(4)); *see also Cruz v. Shalala,* 1995 WL 441967, at *5 (S.D.N.Y.1995) (holding that the right to a post-hearing consultative examination exists only where a claimant's medical sources cannot or will not provide sufficient medical evidence regarding impairment for a determination about whether the claimant is disabled). "If the evidence does not support work-related functional limitations resulting from the possible mental impairment, additional development, including review by a psychiatrist or psychologist is not necessary. *Haskins v. Comm'r of Soc. Sec.*, 2008 WL 5113781, at *7, n. 5 (N.D.N.Y. 2008). Since the Court is remanding this action for further development of the record, the ALJ may wish to consider whether additional consultative examinations would be helpful to the determination of plaintiff's disability claim.

## III.     CREDIBILITY

Plaintiff claims that the ALJ failed to apply the appropriate legal standards in assessing her credibility. "The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her symptoms are consistent with the objective medical and other evidence. *See* SSR 96 7p, 1996 WL 374186, at *2 (SSA 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record. SSR 96 7p, 1996 WL 274186, at *5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Saxon v. Astrue*, 781 F.Supp.2d 92, 105 (N.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and

whether his decision is supported by substantial evidence. *Melchior v. Apfel*, 15 F.Supp.2d 215, 219 (N.D.N.Y.1998) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987) (citations omitted)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and his own activities during the relevant period. *Howe Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y. 2007). The ALJ must also consider whether "good reasons" exist for failing to follow the prescribed treatment, e.g. religious objections, lack of ability to pay, significant risks associated with treatment. SSR 82 59; *see also Grubb v. Apfel*, 2003 WL 23009266, at *4 *8 (S.D.N.Y. 2003). The ALJ determines issues of credibility and great deference is given his judgment. *Gernavage v. Shalala*, 882 F.Supp. 1413, 1419, n. 6 (S.D.N.Y. 1995).

Again, plaintiff's arguments are brief and cursory. Plaintiff simply argues that the credibility analysis is flawed because the ALJ's reasoning is insufficient. Plaintiff contends that her continuing treatment, psychiatric disorder and G.I. problems support her decision not to return to work. Plaintiff does not cite to any portion of the record supporting her assertions. Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ correctly applied the standard, enumerated in 20 C.F. R. § 404.1529(c)(3)(i)-(iv), in assessing plaintiff's credibility. Disability requires more than mere inability to work without pain. *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir.1983) ("To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment."). The record contains clear documentation that plaintiff suffers from pain, however, substantial evidence supports the ALJ's finding that the limiting effects of plaintiff's symptoms, including pain, were not entirely credible. *See Payne v. Astrue*, 2013 WL 550677, at *7 (N.D.N.Y. 2013). The ALJ discussed plaintiff's hearing testimony, medication, side-effects, activities of daily living

and ability to work and found plaintiff "not credible" because her "statements concerning the intensity, persistence and limiting effects of these symptoms . . . are inconsistent with the above residual functional capacity assessment". (T. 29). With respect to plaintiff's spinal condition, the ALJ noted that plaintiff, "has received very little treatment in the last several years for her spinal condition, chiefly confined to taking medications". (T. 29). The ALJ also acknowledged Dr. Kilbourne's report that plaintiff was not taking any medication for her pain and that she appeared "deconditioned". (T. 31). The ALJ also discussed plaintiff's activities of daily living noting that plaintiff cooks, sweeps, does laundry and shops once a month and plaintiff's claim that her six year old daughter does the dishes. (T. 29).

The ALJ adequately addressed plaintiff's complaints of psychiatric problems and commented that plaintiff, "did not seek psychiatric treatment until 2009 when she was mandated into psychiatric and substance abuse treatment due to reports to Child Protective Services that she was neglecting her child". The ALJ also noted that N.P. Hill observed that plaintiff was "stable on medications" and that, "her symptoms rapidly responded to medications and therapy". (T. 32). The ALJ's analysis included an extensive discussion of plaintiff's various medications and the side-effects. or lack thereof.

The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence and/or the lack of medical treatment. *Howe Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y. 2007). Taken as a whole, the record supports the ALJ's determination that plaintiff was not entirely credible. The Court finds that the ALJ employed the proper legal standards in assessing the credibility of plaintiff's complaints of pain and adequately specified the reasons for discrediting plaintiff's statements.

**IV.    RFC**

Residual functional capacity is:

> "what an individual can still do despite his or her limitations....
> Ordinarily, RFC is the individual's maximum remaining ability to do
> sustained work activities in an ordinary work setting on a regular and
> continuing basis, and the RFC assessment must include a discussion
> of the individual's abilities on that basis. A 'regular and continuing
> basis' means 8 hours a day, for 5 days a week, or an equivalent work
> schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96 8p, Policy Interpretation Ruling

Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96 8p"), 1996

WL 374184, at *2 (S.S.A. July 2, 1996)). In making the RFC determination, the ALJ must

consider a claimant's physical abilities, mental abilities, symptomology, including pain and other

limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R.

§ 404.1545(a). The ALJ must consider all the relevant evidence, including medical opinions and

facts, physical and mental abilities, non-severe impairments, and plaintiff's subjective evidence of

symptoms. 20 C.F.R. §§ 404.1545(b)-(e).

　　As discussed in Part I, *supra*, the ALJ failed to comply with the relevant Regulations

pertaining to the analysis of some of the medical opinion evidence. Those errors compel the

Court to remand this matter and further require the ALJ to reassess the RFC. Plaintiff asserts

additional allegations related to the ALJ's RFC assessment and contends that it is flawed due to

the ALJ's failure to properly consider plaintiff's spinal disorders, pain, mental disorder and

gastrointestinal disorder. Because the ALJ erred in evaluating the opinions from N. P. Hill, Dr.

Cook and Dr. Dingley, the Court cannot decide whether the ALJ's finding at step four of the

sequential evaluation was supported by substantial evidence. Remand is appropriate in instances,

such as this, when the reviewing court is "unable to fathom the ALJ's rationale in relation to the

evidence in the record" without "further findings or clearer explanation for the decision."

*Williams v. Callahan*, 30 F.Supp.2d 588, 594 (E.D.N.Y.1998) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996)).

## V.     APPEALS COUNCIL AND VETERANS ADMINISTRATION RECORDS

Plaintiff argues that the Appeals Council accepted new and relevant evidence but failed to address the evidence in the decision.  In addition, on March 21, 2014, plaintiff filed a letter motion requesting that the Court consider the January 29, 2014 decision from the Veterans Administration as part of the record herein.[13]  (Dkt. No. 14).

Remand, for the reasons set forth above, obviates the need for the Court to engage in a detailed analysis of these arguments.  The evidence submitted to the Appeals Council and the Veterans Administration decision are now part of the administrative record and will be considered by the ALJ on remand.  *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir.1996); *see also Cataneo v. Astrue*, 2013 WL 1122626, at *15 (E.D.N.Y. 2013).

## CONCLUSION

For the reasons stated above, it is hereby **RECOMMENDED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) and plaintiff's letter motion regarding additional evidence (Dkt. No. 14) be **GRANTED**; and further, that the Commissioner's decision be **VACATED** and the matter **REMANDED** to the agency for further consideration consistent with this recommendation.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

---

[13] Defendant did not oppose this motion.

**APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C §636(b)(1); FED R. CIV. P. 72, 6(a), 6(e).

It is further **ORDERED** that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: June 17, 2014
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge